United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIGO ENERGY INC., <br>           Plaintiff, <br>    v. <br> SUNSPEC ALLIANCE, <br>           Defendant. | Case No. 23-cv-00762-WHO <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** <br> Re: Dkt. No. 19 |

Defendant SunSpec Alliance ("SunSpec") moves to dismiss this case brought by plaintiff Tigo Energy Inc. ("Tigo"), which alleges what appears to be a novel theory: that SunSpec infringed on one of its patents when it set an industry standard for a "rapid shutdown system" ("RSS") for solar panels.

The motion is DENIED in part and GRANTED in part, with leave to amend. Tigo has plausibly alleged that SunSpec infringed on the asserted claims, literally and under the doctrine of equivalents, by directing its affiliated laboratories to test third party products in accordance with its specification. By testing those products, the labs plausibly "use" or "make" the claimed systems, and by allegedly doing so under SunSpec's direction and control, it is plausible that SunSpec is vicariously liable. These same allegations support a theory of induced infringement as it relates to the laboratories.

The other theories of liability based upon the alleged acts by SunSpec, its members, customers, and solar system installers do not plausibly show infringement, at least as pleaded. Tigo makes a number of allegations relating to these actors, but does not adequately connect them to any theory of infringement under which SunSpec would plausibly be liable. To the extent that

1   Tigo's infringement claim depends on the alleged acts by SunSpec's members, customers, and
2   solar system installers, it is DISMISSED with leave to amend.

**BACKGROUND**

Tigo develops technology for "module-level rapid shutdown" of photovoltaic panels, commonly known as solar panels. *See* First Amend. Compl. ("FAC") [Dkt. No. 17] ¶ 6. As Tigo explains in its opposition, "[i]n the rooftop solar industry, 'rapid shutdown' is [a] safety feature that enables a solar system to be shut down quickly at need"—for example, if firefighters need to access an area where a solar system is installed or if supplying the system with power would be dangerous. *See* Oppo. [Dkt. No. 21] 4:2-8.

Central to this litigation is U.S. Patent No. 8,933,321 ("the '321 Patent"), of which Tigo is the owner and assignee of all substantial rights. FAC ¶¶ 10-11. Issued in January 2015, the '321 Patent discloses "[s]ystems and methods . . . for automatically or remotely rendering a solar array safe during an emergency or maintenance." *See* FAC, Ex. 1 ("'321 Patent"), Abstract. It recites 20 claims, two of which are at issue. *See id.* at 11:17-12:56. Claim 1 recites:

> A system comprising:
>
> a watchdog unit coupled between a solar module and a power bus, the power bus configured to connect a plurality of solar modules to an inverter, the watchdog unit having:
>
> a local controller configured to monitor a communication from a central controller remote from the solar module and determine whether the communication has been interrupted for a time period longer than a predetermined number of allowed skips; and
>
> at least one switch configured to disconnect the solar module from the power bus in response to a determination by the location controller than the communication from the central controller has been interrupted for a time period longer than the predetermined number of allowed skips;
>
> wherein the watchdog unit is configured to connect the solar module to the power bus when the communication is not interrupted.

*Id*. at 11:18-36.

Claim 12 recites:

> A system comprising:

2

> a watchdog device coupled between a solar module and a power bus, the power bus configured to connect a plurality of solar modules to an inverter, the watchdog device configured to:
>
> verify communication with a central controller remote from the solar module; and
>
> shutdown the solar module from the power bus if communication with the central controller cannot be verified for a time period longer than a predetermined number of allowed skips.

*Id*. at 12:11-20.

SunSpec is an "information standards and certification organization" that has "published specifications concerning rapid shutdown technology" that align with the National Electric Code, including a requirement that solar power systems installed on or in buildings "include a rapid shutdown function to reduce shock hazard for emergency responders." FAC ¶¶ 12-15. According to the FAC, SunSpec "provides testing and certification" that allows its members to verify that their products adhere to SunSpec specifications. *See id*. ¶ 18. When a SunSpec member wants to certify one of its products, it allegedly pays SunSpec a fee, and a SunSpec-authorized laboratory performs the tests required by the specification "under SunSpec's direction and control." *Id*. SunSpec then receives a report on the testing and determines whether to certify the product as compliant with its specification. *Id*.

Two specifications are at issue: an August 21, 2017, Communication Signal for Rapid Shutdown SunSpec Interoperability Specification ("the RSD Specification") and a March 9, 2021, Communication Signal for Rapid Shutdown Test Specification ("the RSD Test Specification"). *Id*. ¶ 14; *see also id*., Exs. 2-3. It appears from the papers that the difference between the two is that the RSD Specification is the specification for the rapid shutdown technology itself, while the RSD Test Specification outlines certain tests that may be performed to determine whether a product meets the RSD Specification. *See id*. ¶ 18; *see also id.*, Exs. 2-3.

According to Tigo, "at least Claims 1 and 12 of the '321 Patent are necessary to the SunSpec RSD Specification." *Id.* ¶ 23. The FAC alleges that SunSpec infringes these claims "by directing and controlling SunSpec authorized test laboratories to test SunSpec members' products and by certifying such products as compliant" with the RSD Specification. *Id*. ¶ 22.

3

Alternatively, it alleges that SunSpec induces infringement "by directing and controlling" the labs "to perform the tests required by the RSD Test Specification, which involve making and using of a system that practices the RSD Specification." *Id.*

The FAC makes a host of other allegations that Tigo contends show either literal infringement, infringement under the doctrine of equivalents, or induced infringement. *See, e.g., id.* ¶¶ 55-56. For example, it alleges that SunSpec's publication and provision of the RSD Specification to its members infringes Claims 1 and 12, and that SunSpec induced infringement "by its members (and their customers and solar system installers) by issuing press releases" regarding its attempt to invalidate claims in the '321 Patent. *See id.* ¶¶ 55-57. The FAC further states that SunSpec members infringe the claims when they sell products certified as compliant with the RSD Specification, and that customers and solar system installers infringe "by making, using, offering for sale, selling, and/or importing products and systems that practice the SunSpec RSD Specification in the United States." *Id.* ¶ 59. Tigo also says that it told SunSpec that products that adhere to the RSD Specification need a license to the '321 Patent and asked SunSpec to inform its members of such, but that SunSpec refused to do so and denied that a license was needed. *Id.* ¶¶ 19-20.

Tigo sued SunSpec in February 2023. Dkt. No. 1. After SunSpec moved to dismiss, Tigo filed the FAC, which alleges a single count of infringement. Dkt. Nos. 11, 17. SunSpec again moved to dismiss in April 2023. Dkt. No. 19.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to

4

1    "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

2    In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts her allegations as true and draws all reasonable inferences in her favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

   If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## DISCUSSION

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). There are two types of direct infringement: literal infringement and infringement under the doctrine of equivalents. *See Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005). In addition, "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b).

Although Tigo only asserts one infringement claim against SunSpec, it proffers three theories of liability that SunSpec challenges in its motion: literal infringement, infringement under the doctrine of equivalents, and induced infringement. *See* FAC ¶¶ 50-79; *see also* Mot. to Dismiss ("MTD") [Dkt. No. 19] 9:15-23:22. It is worth noting that Tigo takes a kitchen-sink approach to its claim, alleging different acts by different actors (SunSpec, but also the laboratories, SunSpec members, customers, and solar panel installers not named as defendants in this suit) under each theory of liability, and collapsing certain arguments made regarding each. *See*

5

1   *generally* FAC.  I will consider each theory of liability as I understand it to be alleged in the
2   operative complaint.

## I.     DIRECT INFRINGEMENT

### A.  Literal Infringement

Of the ways to directly infringe upon a patent, two are central to Tigo's claim against SunSpec: "make" and "use."  *See* 35 U.S.C. § 271(a).[1]  The FAC alleges that SunSpec directly infringes at least Claims 1 and 12 of the '321 Patent "by making and using a system . . . to test sample products provided by SunSpec's members to ensure their compliance with the SunSpec RSD Specification" that practices every limitation of the two claims.  *See, e.g.*, FAC ¶ 67.

#### 1.  "Use" by SunSpec

To "use" a system in a manner than infringes under section 271(a), "a party must put the invention into service, i.e., control the system as a whole and obtain benefit from it."  *Centillion Data Sys., LLC v. Qwest Commcn's Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011).  "[D]irect infringement by 'use' of a system claim requires a party to use each and every element of a claimed system" and obtain a benefit from each.  *Id.* (citations omitted); *see also Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017).  But the party need not exercise "physical or direct control over each individual element of the system."  *See Centillion*, 631 F.3d at 1284 (cleaned up).  Instead, "[i]n order to 'put the system into service,' the end user must be using all portions of the claimed invention."  *Id*.

The arguments here are somewhat limited, as neither party employed the proper standard in evaluating Tigo's literal infringement claim.  *See* MTD at 7:20-8:9; Oppo. at 6:19-12:11.[2]

---

[1] The FAC also alleges that SunSpec infringes when members "selling products certified as compliant with the SunSpec RSD Specification" and "customers and solar system installers of products that are certified as compliant" with that specification "sell and/or offer for sale solar systems that practice the SunSpec RSD Specification."  *See, e.g.*, FAC ¶ 62.  But the FAC does not appear to allege that SunSpec sells these products itself, and as I explain later in this Order, it does not clearly articulate how the sale of the *products* infringe on the *systems* recited in Claims 1 and 12.  Nor does it sufficiently explain how SunSpec is responsible for these customers or solar system installers.  As a result, I focus on the apparent "use" and "make" claims in my analysis of literal infringement.

[2] SunSpec did not recognize this until its reply brief, when it argued for the first time that *Centillion* applies.  *See* Reply [Dkt. No. 22] 7:21-8:15.

6

However, the core arguments that SunSpec makes carry over to Tigo's systems claims. According to SunSpec, Tigo has not adequately alleged direct infringement because: (1) the testing system is missing certain claim elements, primarily a solar module; and (2) Tigo has not pleaded facts "that establish a reason to attribute the testing labs' actions to SunSpec," including those that would establish "control, an agency relationship, a joint-enterprise, or contractual relationship." MTD at 9:15-12:8.

To the first point, the FAC primarily relies on two figures to show direct infringement. The first is found in Paragraph 46 and comes from the RSD Test Specification:




FAC ¶ 46 (citing FAC, Ex. 3 at 7-8). The FAC alleges that the "RSD" (the device being tested for certification) is a "watchdog unit" that is "coupled between the equivalent of a solar module (the components on the left drawn in black that are connected to the RSD inputs, which are described in the RSD Test Specification as 'equipment to simulate the voltage of a PV module') and a power bus," with the power bus "configured to connect a plurality of solar modules to an inverter and a transmitter (the SunSpec signal pattern generator)." *Id*. It further alleges that the SunSpec signal pattern generator is a central controller remote from the RSD "and the solar module or its equivalent." *Id*. ¶ 47.

As SunSpec notes, these test configurations do not appear to contain the solar module that

is recited in both Claims 1 and 12.  *See* MTD at 11:4-9; *see also* '321 Patent at 11:18-36, 12:11-20.  Instead, they depict a series of components that *simulate* a solar module's power.  Tigo acknowledges this in its FAC, describing the components on the left side of the diagrams as "the equivalent of a solar module."  *See* FAC ¶ 46.  The FAC cites to the RSD Test Specification, which describes "equipment to simulate the voltage of a PV module."  *Id*., *see also* Ex. 3 at 8-9.  But none of the components are actually described as or alleged to be a solar module.  *See id*. ¶ 46.  Because "direct infringement by 'use' of a system claim requires a party to use each and every element of a claimed system" and use "all portions of the claimed invention," Tigo has not adequately pleaded direct infringement by SunSpec—at least, based on this test configuration—because it does not plausibly allege that each and every element of the claimed system is used.  *See Centillion*, 631 F.3d at 1284.

Tigo points to another figure in the FAC, which comes from the RSD Specification:



*See* Oppo. at 7:6-10 (citing in part FAC ¶ 62); *see also* FAC, Ex. 2 at 11.  According to the FAC, the "receiver" is the watchdog unit, and is coupled between a power bus and a solar module, the latter of which is "one of the '6-30 PV modules'" identified in the figure.  *See id*.  Tigo argues that the "rapid shutdown system" shown in this figure includes solar modules and that SunSpec

8

therefore infringes the '321 Patent in a variety of situations, including:

    (1) "when a solar installer installs a solar system as shown" in the figure;

    (2) "when a SunSpec member directs an installer to install a solar system as shown" in the figure "or itself installs a solar system as shown";

    (3) "when SunSpec performs certification testing on its members' products, either itself or by directing and controlling a SunSpec authorized test laboratory, using a solar system as shown" in the figure; and

    (4) "when SunSpec developed or tested its own standard."

*See* Oppo. at 8:1-20. Although SunSpec addresses *other* figures that Tigo references in its opposition, it does not address this one. *See* Reply at 2:22-6:13.[3]

    Tigo's arguments do not save its direct infringement theory, at least as it relates to SunSpec's own "use" of the claimed system. Tigo does not explain how providing a drawing of a rapid shutdown system, even one depicting solar panels, "uses" that system. And its theory appears to be a novel; neither party has identified cases involving standard setting organizations held liable for patent infringement by way of setting a standard.

    I requested supplemental briefing from the parties, specifically "cases concerning standard-setting entities being held liable for patent infringement." Dkt. No. 25. The three cases that Tigo proffered are distinguishable, primarily because, as Tigo admits, "the defendant was an entity that followed a standard, not the entity that established the standard." *See* Dkt. No. 26 (citing *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010); *France Telecom, S.A. v. Marvell Semiconducter, Inc.*, No. 12-CV-04967-WHA (NC), 2013 WL 1878912, at *2-3 (N.D. Cal. May 3, 2012); *On Track Innovations Ltd. v. T-Mobile USA, Inc.*, 106 F. Supp. 3d 369, 378 (S.D.N.Y. 2015)). That distinction is critical. True, the Federal Circuit has held that "a district court may rely on an industry standard in analyzing infringement," instructing that in such cases, claims

---

[3] These other figures from the RSD Test Specification, which Tigo argues "suggest the use of solar panels for testing," do not appear in the FAC. *See* Oppo. at 9:1-10:13. As a result, they cannot save Tigo's direct infringement theory. *See Barbera v. WMC Mortg. Corp.*, No. C-04-3738-SBA, 2006 WL 167632, at *2 n.4 (N.D. Cal. Jan. 19, 2006) ("It is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss.").

1  should be compared to the accused product to determine infringement" and "if an accused product
2  operates in accordance with a standard, then comparing the claims to that standard is the same as
3  comparing the claims to the accused product." *Fujitsu*, 620 F.3d at 1327.[4]  But here there is no
4  system from SunSpec to compare the claims too, just the specifications.[5]

*Centillion* provides a helpful comparison.  There, the Federal Circuit found that the defendant did not "use" the patented system because although it made "back-end processing elements" and provided software for customers to use, "it never put[] into service the personal computer data processing means." *Centillion*, 631 F.3d at 1286.  Notably, the court wrote that "[s]upplying the software for the customer to use is not the same as using the system." *Id*.  The same can be said for supplying a specification.  The FAC does not adequately connect the specification itself with SunSpec's "use" of the system—i.e., it does not explain how, based on the specification alone, SunSpec "control[s] the system and obtain[s] benefit from it." *See id*.  Although Tigo argues in its opposition that SunSpec directly infringed Claims 1 and 12 when it developed or tested this standard, or performs certification in accordance with the figure, those allegations are missing from the FAC.  Instead, the complaint alleges that its authorized laboratories perform this testing, not SunSpec itself. *See, e.g.,* FAC ¶ 18 ("SunSpec provides testing and certification for the SunSpec RSD Specification. . . . When a SunSpec member seeks to certify a product, that member pays a fee to SunSpec, and one or more of these SunSpec authorized test laboratories performs the tests required by the RSD Test Specification under SunSpec's direction and control.").

---

[4] But the use of an industry standard is not absolute.  The Federal Circuit also wrote in *Fujitsu* that "in many instances, an industry standard does not provide the level of specificity required to establish that practicing that standard would always result in infringement," and that if "the relevant section of the standard is optional . . . standards compliance alone would not establish that the accused infringer chooses to implement the optional section." *See* 620 F.3d at 1327-28.  "In these instances," the court wrote, "it is not sufficient for the patent owner to establish infringement by arguing that the product admittedly practices the standard, therefore it infringes." *Id*. at 1328.

[5] Nor do these cases support Tigo's theory of infringement as it relates to SunSpec's members, their customers, or solar system installers.  As I explain later in this Order, Tigo has not explained how the make, use, or sale of any *products* by SunSpec members or their customers infringes on the *systems* claims at issue.  And even if the solar system installers' acts constituted infringement, Tigo has not plausibly alleged that SunSpec would be vicariously liable for those actions.

This brings me to SunSpec's second argument: that Tigo has not pleaded "any facts that establish a reason to attribute the testing labs' actions to SunSpec." MTD at 11:24-26. According to SunSpec, "Tigo merely pleads the conclusion that SunSpec directs or controls these separate entities, which would normally be presumed to be independent." *Id*. at 11:26-28 (citing FAC ¶¶ 18, 22, 45-49, 54). Tigo responds that SunSpec is liable "because it directs and controls [the labs'] actions in performing the testing required by the SunSpec test specification." Oppo. at 11:16-17.

Both parties base their argument on cases involving method claims rather than systems claims. *See* MTD at 11:22-12:8 (citing *Mankes v. Vivid Seats Ltd.*, 822 F.3d 1302 (Fed. Cir. 2016)); Oppo. at 11:16-12:11 (citing *Mankes* and *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015)). Again, *Centillion* articulates the relevant consideration: The "only way" that Tigo "can establish 'use'" by SunSpec is if SunSpec is vicariously liable for the actions of the laboratories so that "use" by the labs may be attributed to SunSpec. *See* 631 F.3d at 1286. *Centillion* further explains that a defendant may be vicariously liable for the actions of a third-party if it "directs" the third party to perform or the third party acts as its agent. *Id*. at 1287.

The FAC plausibly alleges this. It alleges that SunSpec "establishes relationships" with its authorized laboratories, and that when a SunSpec member seeks product certification, "one or more" of these labs "performs the tests required by the RSD Test Specification under SunSpec's direction and control." FAC ¶ 18. Critically, the FAC alleges that "SunSpec practices the SunSpec RSD Specification"—and the figure that appears to show a solar module—"when directing and controlling the testing of its members' products . . . to certify them as compliant with the SunSpec RSD Specification." *See id*. ¶ 62. Accepting these allegations as true, it is plausible that when one of the authorized laboratories tests a rapid shutdown system to determine whether it complies with the RSD Specification, it "uses" the claimed system. *See id*. ¶¶ 62-68. And because these labs allegedly test the products under SunSpec's direction and control, it is plausible that SunSpec is vicariously liable.

SunSpec may prove otherwise as this case progresses. Its primary argument against the "use" of the claimed system is that the test specification depicted in the FAC did not depict a solar module, which the RSD Specification appears to show. SunSpec did not address the relevant

11

1   figure from the RSD Specification in its opposition.  And of course, discovery may disprove these

2   allegations, along with SunSpec's potential vicarious liability.  But without further argument to the

3   contrary, I find that Tigo has adequately alleged literal infringement by SunSpec by way of the

4   testing performed by the labs in accordance with the RSD Specification.

### 2.  "Make" by SunSpec

To "make" a claimed system under section 271(a), a defendant must "combine all of the claim elements."  *Centillion*, 631 F.3d at 1288.  Neither party references this standard.

Nor did SunSpec separately address Tigo's allegations that SunSpec "made" the claimed system for the purposes of infringement until its reply.  *See* Reply at 8:5-15.  It then argues that it does not "make" "any part of an accused system, and independent third parties must supply all hardware and assemble any systems used," meaning it does not literally infringe on the system by "making" it.  *See id*.

The problem is that SunSpec did not make this argument earlier.  "Raising the issue for the first time in a reply brief does not suffice; reply briefs *reply* to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration."  *Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) (emphasis in original).  By presenting this argument in the final papers on this motion, SunSpec denied Tigo the chance to adequately respond.

The allegations about SunSpec laboratories described above plausibly show that the labs "combine[d] all of the claim elements" in the claimed system when testing products in accordance with the RSD Specification.  *See Centillion*, 631 F.3d at 1288; *see also* FAC ¶ 62.  SunSpec's delayed arguments to the contrary focus on whether a customer completes a system by providing hardware or installing software; it does not specifically address the laboratories.  *See* Reply at 8:5-15.  Without further argument from SunSpec, Tigo's claim may also proceed on the theory that SunSpec literally infringed via the laboratories' "use" of the claimed systems.

### B.  Infringement Under the Doctrine of Equivalents

Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is

12

'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1354 (Fed. Cir. 2018) (citation omitted). "A finding of infringement under the doctrine of equivalents requires a showing that the difference between the claimed invention and the accused product or method was insubstantial or that the accused product or method performs the substantially same function in substantially the same way with substantially the same result as each claim limitation of the patented product or method." *AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320, 1326 (Fed. Cir. 2007). "An analysis of the role by each element in the context of the specific patent claim will thus inform the inquiry as to whether a substitute element matches the function, way, and result of the claimed element." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997).

The parties dispute the level of detail that is required for Tigo to plead infringement under the doctrine of equivalents. SunSpec contends that under *Iqbal* and *Twombly*, Tigo must plead plausible facts in support. Reply at 10:17-19. According to Tigo, when literal infringement is plausibly alleged, "even a general allegation under the doctrine of equivalents is sufficient." Oppo. at 10:25-11:2. Neither party provides a Federal Circuit case that expressly articulates what is required for this type of claim and the case law that I have found is conflicting. *See Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (finding that the plaintiff had plausibly alleged infringement under *Iqbal/Twombly* in a case involving "simple technology" because the complaint "specifically identified the three accused products—by name and by attaching photos of the product packaging as exhibits—and alleged that the accused products meet 'each and every element of at least one claim [of the asserted patents] either literally *or equivalently*.") (emphasis added); *but see Nalco*, 883 F.3d at 1354 (finding that the plaintiff adequately stated a doctrine of equivalents claim under *Twombly* and *Iqbal* because it "explicitly incorporated detailed infringement contentions explaining its doctrine of equivalents claim").

There is consensus among district courts within this Circuit, however, that if a plaintiff plausibly alleges literal infringement, general allegations of infringement under the doctrine of equivalents suffices. *See, e.g., CAO Lighting, Inc. v. Signify N.V.*, No. CV-21-08972, 2022 WL

13

16894518, at *4 (C.D. Cal. Sept. 19, 2022) (finding that because the plaintiff had plausibly alleged literal infringement, a general allegation of infringement under the doctrine of equivalents was sufficient); *Neutrik AG v. ADJ Prods., LLC*, No. CV-19-09937, 2020 WL 6128066, at *4 (C.D. Cal. May 6, 2020) (same); *ALD Social, LLC v. Verkada, Inc.*, No. 23-CV-00049-JSC, --- F. Supp. 3d. ----, 2023 WL 1802418, at *6 (N.D. Cal. Feb. 7, 2023) ("[B]ecause plaintiff's literal infringement allegation is implausible, a conclusory reference to the doctrine of equivalents is insufficient to make the direct infringement claim plausible.").

I will allow Tigo's claim to proceed under the doctrine of equivalents but on more limited grounds than what is alleged in the FAC. As I have explained, Tigo has plausibly alleged direct infringement by SunSpec when it directs and controls its affiliated laboratories to test products in accordance with the RSD Specification. This is enough to support the more general allegations in its FAC that SunSpec infringed under the doctrine of equivalents when its affiliated laboratories tested the products in accordance with that specification. *See* FAC ¶¶ 22, 45. That is all that is needed for now, at least until (and unless) SunSpec provides clear authority to the contrary.

The FAC also makes blanket allegations that SunSpec members, customers, and solar system installers infringe Claims 1 and 12 under the doctrine of equivalents when products that adhere to the RSD Specification "are installed and used as they are designed, intended, and certified to be installed and used." *See* FAC ¶ 21. It also alleges that these members, customers, and installers "make, use, sell, offer to sell, and import products that adhere to the SunSpec RSD Specification despite SunSpec's knowledge that doing so infringes at least Claims 1 and 12 of Tigo's '321 Patent, literally or under the doctrine of equivalents." *Id*. ¶ 55. Because Tigo has not plausibly alleged literal infringement based on these acts, these allegations are too conclusory to support a theory of infringement under the doctrine of equivalents.

## II. INDUCED INFRINGEMENT

A party is liable for induced infringement if it "took certain affirmative acts to bring about the commission by others of acts of infringement and had knowledge that the induced acts constitute patent infringement." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1286 (Fed. Cir. 2020) (citations and quotations omitted). "The intent standard focuses on . . . the defendant's subjective

1  state of mind, whether actual knowledge or the subjective beliefs (coupled with action to avoid
2  learning more) that characterizes willful blindness." *Id*. (citation omitted). "[W]here there has
3  been no direct infringement, there can be no inducement of infringement under section 271(b)."
4  *Limelight Networks, Inc. v. Akami Techs., Inc.*, 572 U.S. 915, 922 (2014).

SunSpec argues that Tigo's induced infringement theory fails because the FAC does not allege: (1) any predicate direct infringement; (2) that SunSpec "engaged in any activities that encourage infringement"; (3) that SunSpec specifically intended to cause its members, their installers or customers, or the laboratories to infringe the '321 patent; and (4) that SunSpec knew of any infringement. MTD at 13:15-23:22.

The first argument narrows the scope of this theory of liability. As I have explained, the FAC plausibly alleges that the SunSpec-affiliated laboratories used and made the claimed system when it tested products in accordance with the RSD Specification. As pleaded, this is an act of direct infringement that supports Tigo's theory of induced infringement by SunSpec.

But Tigo does not limit its induced infringement theory to the laboratories. The FAC also alleges that SunSpec induced infringement by its members, their customers, and solar installers "to use the SunSpec RSD Specification, and to make, use, and sell products adhering to the SunSpec RSD Specification." *See* FAC ¶¶ 55-56. But it does not allege with any specificity *how* the customers or solar installers directly infringe, beyond repeating the language found within section 271(a). *See* 35 U.S.C. § 271(a). As pleaded, the allegations of direct infringement by customers or solar installers are too conclusory to support a claim of induced infringement or otherwise proceed. *See* MTD at 17:22-28.

The allegations about SunSpec's members, though more detailed, still fall short. SunSpec argues in its motion that its members "deal in *individual products*" and do not "make, use, sell, offer for sale, or import *systems*" like those recited in the asserted claims. *See, e.g., id*. at 2:13-20 (emphasis in original). That is a valid point. The FAC alleges that one of SunSpec's members, SMA Solar Technology AG ("SMA"), makes a "JMS-F rapid shutdown device" ("a module-level rapid shutdown unit that is attached to individual photovoltaic panels") and inverters (that are "specifically designed and advertised to be used in combination with a rapid shutdown device,

United States District Court
Northern District of California

1 including the JMS-F rapid shutdown device"). *See* FAC ¶¶ 12, 40-41. But the FAC does not

2 explain how the creation, use, or sale of these *products* amounts to an infringement of the *systems*

3 claims at issue. Indeed, the FAC describes these as "products" and compares them to specific

4 elements of the asserted claims, rather than describing them as an infringing system. *See, e.g.*, *id.*

5 ¶¶ 42 (alleging that "the SMA inverters provide a watchdog signal . . . to a rapid shutdown device,

6 e.g., the JMS-F shutdown device), 67 (describing "SMA's products"); 69 (describing the JMS-F

7 device as "part of a system in which it is a watchdog unit" and comparing the SMA inverter to the

8 claimed inverter).

9       Tigo may be able to add allegations to the complaint that plausibly show that SunSpec's

10 members, customers, or solar installers directly infringed upon its systems claims to support its

11 theory of induced infringement. To the extent that the infringement claim depends on this theory

12 as it relates to these third-party actors, it is too conclusory to proceed.

13       Next, SunSpec argues that the FAC does not plausibly allege that it "engaged in any

14 activities that encourage infringement." MTD at 18:10-12. I disagree. The FAC alleges that

15 SunSpec induces infringement in part by instructing the laboratories "to perform tests under the

16 RSD Test Specification, which involve making and using a system practicing at least Claims 1 and

17 12 of the '321 Patent" and that the tests performed by the labs are "required by the RSD Test

18 Specification" and performed "under SunSpec's direction and control." *See, e.g.,* FAC ¶¶ 18, 54.

19 These allegations plausibly show that SunSpec "took certain affirmative acts to bring about the

20 commission by others of acts of infringement" by directing the laboratories to test products in

21 accordance with the RSD Specification. *See TecSec*, 978 F.3d at 1286.

22       SunSpec's remaining arguments against induced infringement are that Tigo has not

23 sufficiently alleged that SunSpec specifically intended for the laboratories to infringe the '321

24 Patent or that SunSpec knew of any infringement. MTD at 20:10-23:22. "For an allegation of

25 induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly

26 showing that the accused infringer specifically intended another party to infringe the patent and

27 knew that the other party's acts constituted infringement. *Lifetime Indus., Inc. v. Trim-Lok, Inc.*,

28 869 F.3d 1372, 1379 (Fed. Cir. 2017) (citation omitted and cleaned up).

16

To begin, the FAC plausibly alleges that SunSpec knew about the '321 Patent and specific claims at issue. Paragraph 23 alleges that in October 2017, Tigo "formally notified SunSpec" that it owned the '321 Patent and "that at least Claims 1 and 12 of the '321 Patent are necessary to the SunSpec RSD Specification." FAC ¶ 23. The FAC further alleges that in July 2021, SunSpec sought *inter partes* review of the '321 Patent by the Patent Trial and Appeal Board ("PTAB") "in an effort to invalidate claims of the '321 Patent that are necessary to the RSD Specification," and that after the PTAB issued its final written decision rejecting the invalidity arguments, SunSpec issued a press release acknowledging that the PTAB "ultimately declined to cancel certain other challenged claims" of the patent. *See id*. ¶¶ 30-34.

According to Tigo, "it is fair to infer" from these allegations that "SunSpec knows that its rapid-shutdown standard infringes Tigo's '321 Patent" and that it is "at least plausible that SunSpec specifically intends others to use the system described" in that standard. Oppo. at 13:4-5, 17:11-18. SunSpec responds that the FAC makes only "generic allegations that [it] had knowledge and intended to cause" the labs to use the RSD Specification, and relies on "SunSpec's knowledge of Tigo's unproven claims and assertions in this case," which "do[] not mean that SunSpec knows that practicing the specification infringes the '321 Patent." Oppo. at 13:10-15:9.

Tigo has the better argument. The FAC alleges that SunSpec has known since at least October 2017 that "products adhering to the SunSpec RSD Specification infringe at least Claims 1 and 12 of the '321 Patent," and that despite this, SunSpec has directed the authorized laboratories to test the products for compliance with that specification. *See* FAC ¶ 54. The FAC further alleges that Tigo told SunSpec that Claims 1 and 12 were "necessary to the SunSpec RSD Specification" and notified it of the purported infringement. *Id*. ¶¶ 23, 27, 29. SunSpec then challenged the validity of the '321 Patent with the PTAB. *Id*. ¶ 30. SunSpec tries to dismiss this as indicia of Tigo's belief about infringement rather than its own, but "[a]n accused infringer can, of course, attempt to prove that the patent in suit is invalid; if the patent is indeed invalid, and shown to be so under proper procedures, there is no liability." *See Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 644 (2015) (citation omitted). Taken together, these facts plausibly allege that SunSpec knew that the use of its RSD Specification infringed Claims 1 and 12, and intended

17

for the labs to infringe upon those claims by testing products in accordance with the specification. *See Lifetime Indus.*, 869 F.3d at 1379. As with the other allegations, SunSpec may be able to disprove these as the case proceeds. For now, Tigo has plausibly alleged induced infringement—at least via the laboratories.

To sum up: Tigo's infringement claim may proceed under each of the theories of liability identified above: literal infringement, infringement under the doctrine of equivalents, and induced infringement. But those theories are only adequately pleaded as it relates to the theory that SunSpec-affiliated laboratories' use or make the claimed systems. To the extent that the claim relies on other alleged acts by SunSpec members, customers, or solar panel installers, they have not been sufficiently alleged. I will, however, grant Tigo leave to amend its claim, as additional allegations may plausibly support its additional theories of liability.

## CONCLUSION

The motion is DENIED in part and GRANTED in part, with leave to amend as described above. Any amended complaint is due within 20 days of the issuance of this Order.

**IT IS SO ORDERED.**

Dated: June 28, 2023

William H. Orrick
United States District Judge