UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIGO ENERGY INC., | Case No. 23-cv-00762-WHO |
| Plaintiff, | |
| v. | **ORDER DENYING MOTION TO DISMISS** |
| SUNSPEC ALLIANCE, | Re: Dkt. No. 32 |
| Defendant. | |

This case raises the apparently novel question of whether a standards setting entity (defendant SunSpec Alliance ("SunSpec")) is liable for setting an industry standard for a "rapid shutdown system" ("RSS") for solar panels that allegedly infringed another company's (plaintiff Tigo Energy Inc. ("Tigo")) patent. In its motion to dismiss, SunSpec raises a number of reasons why Tigo has not stated a claim, but they all rest on factual predicates that must be established in discovery. In the second amended complaint ("SAC"), Tigo has plausibly alleged that SunSpec infringed on the asserted claims, literally and under the doctrine of equivalents ("DOE"), by directing its affiliated laboratories to test third party products in accordance with its specification. By testing those products, the labs "use" or "make" the claimed systems, and doing so under SunSpec's direction and control plausibly makes SunSpec vicariously liable for the labs' actions. These same allegations support the theory that SunSpec induced the labs to infringe. Tigo also plausibly alleged that at least some of SunSpec's members and their members' customers directly infringed on the asserted claims by offering systems that declare that they comply with SunSpec's RSD Specifications. This allegation of direct infringement supports Tigo's final allegation that SunSpec induced its members and their customers to infringe. SunSpec's factual attacks on the SAC may well be borne out in discovery, but as a matter of pleading the SAC plausibly states

United States District Court
Northern District of California

1  Tigo's claims.

2  <center>**BACKGROUND**</center>

3  **I.    FACTUAL BACKGROUND**

4      Tigo develops technology for "module-level rapid shutdown" of photovoltaic panels,

5  commonly known as solar panels.  *See* Second Amend. Compl. ("SAC") [Dkt. No. 31] ¶ 8.  As it

6  explained in its opposition to SunSpec's first motion to dismiss, "[i]n the rooftop solar industry,

7  'rapid shutdown' is [a] safety feature that enables a solar system to be shut down quickly at

8  need"—for example, if firefighters need to access an area where a solar system is installed or if

9  supplying the system with power would be dangerous.  Oppo. [Dkt. No. 21] 4:2-8.

10      Central to this litigation is U.S. Patent No. 8,933,321 (the "'321 Patent"), of which Tigo is

11  the owner and assignee of all substantial rights.  SAC ¶¶ 12-13; *see also id.* Ex. 1.  Issued in

12  January 2015, the '321 Patent describes a system for "rendering a solar array safe during an

13  emergency."  SAC, Ex. 1 Abstract.  It recites 20 claims, three of which are at issue.  *See id.* at

14  11:17-12:56. Claim 1 recites:

15          A system comprising:

16          a watchdog unit coupled between a solar module and a power bus, the power bus
           configured to connect a plurality of solar modules to an inverter, the watchdog unit
17          having:

18          a local controller configured to monitor a communication from a central controller
           remote from the solar module and determine whether the communication has been
19          interrupted for a time period longer than a predetermined number of allowed skips;
           and
20

21          at least one switch configured to disconnect the solar module from the power bus in
           response to a determination by the location controller than the communication from
22          the central controller has been interrupted for a time period longer than the
           predetermined number of allowed skips;
23

24          wherein the watchdog unit is configured to connect the solar module to the power
           bus when the communication is not interrupted.
25  *Id.* at 11:18-36.

26      Claims 12 and 13 recite:

27          12. A system comprising:

28

<center>2</center>

1

2

> a watchdog device coupled between a solar module and a power bus, the power bus configured to connect a plurality of solar modules to an inverter, the watchdog device configured to:

3

> verify communication with a central controller remote from the solar module; and

4

5

> shutdown the solar module from the power bus if communication with the central controller cannot be verified for a time period longer than a predetermined number of allowed skips.

6

7

> 13. The system of claim 12, wherein to shutdown the solar module entails disconnecting the solar module from the power bus.

8

*Id*. at 12:11-20.

9        SunSpec is an "information standards and certification organization" that has "published

10 specifications concerning rapid shutdown technology" that align with the National Electric Code,

11 including a requirement that solar power systems installed on or in buildings "include a rapid

12 shutdown function to reduce shock hazard for emergency responders." SAC ¶¶ 18-23. According

13 to the SAC, SunSpec "developed and publishes the SunSpec RSD Specifications with the intent

14 that they be used." *Id.* ¶ 24. SunSpec's Rapid Shutdown Fact Sheet on its website states that

15 SunSpec "developed an open standard rapid shutdown communication solution" in order to

16 benefit "all consumers by increasing the safety of PV systems and lowering installation costs."

17 SAC ¶ 31. When a SunSpec member wants to certify one of its products, it pays SunSpec a fee,

18 and a SunSpec-authorized laboratory performs the tests required by the specification "under

19 SunSpec's direction and control." *Id.* ¶ 124. SunSpec then receives a report on the testing and

20 determines whether to certify the product as compliant with its specification. *Id.*

21        Two specifications are at issue: an August 21, 2017, Communication Signal for Rapid

22 Shutdown SunSpec Interoperability Specification ("the RSD Specification") and a March 9, 2021,

23 Communication Signal for Rapid Shutdown Test Specification ("the RSD Test Specification").

24 *Id.* ¶ 21; *see also id*. Exs. 2-3. The SAC states that the Interoperability Specification incorporates

25 the Test Specification. *Id.* Collectively, Tigo refers to the two as the "SunSpec RSD

26 Specifications." *Id.* According to Tigo, "at least Claims 1 and 12 of the '321 Patent are necessary

27 to the SunSpec RSD Specification," and Tigo alerted SunSpec to this fact in October 2017. *Id.* ¶

28 55. Tigo claims that on or about November 1, 2017, SunSpec publicly acknowledged Tigo's

United States District Court
Northern District of California

1    notice that Claims 1 and 12 of the '321. *Id.* ¶ 56. Tigo alleges that SunSpec infringes these claims

2    literally and under the DOE "when SunSpec Authorized Test Laboratories to perform the tests

3    required by the Test Specification on SunSpec members' products so that SunSpec can determine

4    whether or not to certify those products as compliant with the SunSpec RSD Specifications." *Id.* ¶

5    134. Tigo also alleges that SunSpec is actively inducing SunSpec Authorized Test Laboratories to

6    directly infringe on at least claims 1, 12, and 13 of Tigo's '321 patent by inducing SunSpec

7    Authorized Test Laboratories to perform the tests required by the Test Specification, which

8    involve making and using a system that uses the SunSpec RSD Specifications, despite knowing

9    that doing so infringes literally and/or under the DOE. *Id.* ¶ 135.

10    Tigo makes other allegations that it contends show literal infringement, infringement under

11    the DOE, or induced infringement. *See, e.g.*, *id.* ¶ 81. For example, it alleges that SunSpec's

12    publication and provision of the RSD Specification to its members infringes Claims 1, 12, and 13,

13    and that SunSpec induced infringement "by its members (and their customers and solar system

14    installers) by issuing press releases" regarding its attempt to invalidate claims in the '321 Patent.

15    *See id.* ¶¶ 55-62. Tigo also asserts that SunSpec members infringe the claims when they sell

16    products certified as compliant with the RSD Specification. *Id.* ¶ 59. It also says that it told

17    SunSpec that products that adhere to the RSD Specification need a license to the '321 Patent and

18    asked SunSpec to inform its members of such, but that SunSpec refused to do so and denied that a

19    license was needed. SAC ¶¶ 64-65, 81.

20    ## II.    PROCEDURAL BACKGROUND

21    Tigo filed its complaint against SunSpec in February 2023. [Dkt. No. 1]. After SunSpec

22    moved to dismiss, Tigo filed the first amended complaint ("FAC"), alleging a single count of

23    infringement. [Dkt. Nos. 11, 17]. I granted in part and denied in part SunSpec's motion to

24    dismiss the FAC. ("Prior Order") [Dkt. No. 30].

25    Tigo then filed a second amended complaint. SunSpec moved to dismiss the SAC.

26    ("Mot.") [Dkt. No. 32]. Tigo opposed. ("Oppo.") [Dkt. No. 33]. SunSpec replied. ("Repl.")

27    [Dkt. No. 34]. Finding the matter appropriate for resolution without a hearing under Local Rule 7-

28    1(b), I vacated the hearing. [Dkt. No. 35].

United States District Court
Northern District of California

United States District Court
Northern District of California

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*.  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts her allegations as true and draws all reasonable inferences in her favor.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**DISCUSSION**

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a).  There are two types of direct infringement: literal infringement and infringement under the DOE.  *See Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005).  In addition, "[w]hoever

actively induces infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271(b).
Induced infringement is a type of indirect patent infringement.

Although Tigo only asserts one infringement claim against SunSpec, it pleads three distinct
theories of liability, each of which SunSpec challenges in its motion: direct infringement via literal
infringement, direct infringement under the DOE, and induced infringement.  *See generally* SAC.
SunSpec denies that it or its labs, members, or members' customers made, used, or tested the
accused system in such a way that would constitute direct infringement, either literal or under the
DOE.  It also denies induced infringement because a claim of induced infringement requires an
underlying claim of direct infringement.  It further denies induced infringement by insisting that it
did not knowingly direct or encourage its members or their customers to infringe upon the '321
Patent.

## I.      DIRECT INFRINGEMENT

Tigo's theory of direct infringement is that SunSpec infringes at least Claims 1, 12, and 13
of the '321 Patent, literally and under the DOE, when its labs perform the tests required for the
RSD Specification on its members' products.  It asserts that SunSpec uses "every element of the
solar systems of claims 1, 12, and 13" of its '321 Patent by "putting every element collectively
into service" to certify the products, and that SunSpec collects fees for doing so.  SAC ¶¶ 103,
134.  In response, SunSpec argues that this fails to plead direct infringement because Tigo does
not plausibly allege a single infringing system that includes all elements of the asserted systems
claims of the '321 Patent; that SunSpec does not use the systems because it does not do any testing
itself; and that it does not make the systems because its members make the products that are tested
by its third-party labs for compliance.  Mot. 2:3-5; *id.* 9:8-11, 12-18.

### A.      Vicarious Liability

Tigo does not claim that SunSpec conducts testing.  Instead, it contends that SunSpec is
vicariously liable for the infringement carried out by the third-party testing laboratories because
the labs directly infringe the patent and the labs are under SunSpec's control.  *See* Oppo. 7:15-23,
8:1-2; SAC ¶¶ 102-15.

United States District Court
Northern District of California

6

1    To "use" a system in a manner that infringes under section 271(a), "a party must put the

2 invention into service, i.e. control the system as a whole and benefit from it." *Centillion Data*

3 *Sys., LLC v. Qwest Commcn's Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011). "[D]irect

4 infringement by 'use' of a system claim requires a party to use each and every element of a

5 claimed system" and requires that the party obtain a benefit from each. *Id.* (citations omitted); *see*

6 *also Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017).

7 But the party need not exercise "physical or direct control over each individual element of the

8 system." *Centillion*, 631 F.3d at 1284 (cleaned up). A party can be "vicariously liable" for direct

9 infringement where it "controls or directs the actions of another to perform one or more steps of

10 the method," even if the party did not itself perform all the steps. *Id.* at 1286-87 (citations

11 omitted). The Federal Circuit has also held that making a system for the purposes of a direct

12 infringement claim under section 271(a) "requires a single entity to combine all the claim elements

13 and that, if a customer, rather than an accused infringer, performs the final step to assemble the

14 system, then the accused infringer has not infringed." *Acceleration Bay LLC v. 2K Sports, Inc.*, 15

15 F.4th 1069, 1074 (Fed. Cir. 2021).

16    Tigo plausibly alleges that the testing laboratories infringe the '321 Patent. It asserts that

17 SunSpec establishes relationships with its labs and that those labs perform the tests required by the

18 SunSpec RSD Test Specification when a SunSpec member seeks product certification. SAC ¶

19 102. Tigo contends, and SunSpec does not contradict, that SunSpec practices the SunSpec RSD

20 Specifications when it checks members' products for compliance with those same specifications.

21 SAC ¶¶ 102-103.

22    SunSpec argues that the testing laboratories only interact with the Test Specifications, not

23 the Interoperability Specification, and therefore Tigo cannot plausibly allege that the testing

24 laboratories are using the accused system. *See, e.g.* Mot. 10; *see, also* Oppo. 12:10-19. But that

25 raises a factual dispute that should be resolved at a later stage. Tigo has plausibly alleged that the

26 testing laboratories are using the accused system to test SunSpec member's products for

27 compliance with SunSpec's parameters.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Next, Tigo plausibly alleges that SunSpec exerts sufficient control over the testing

2    laboratories to be liable for the labs' actions.  Tigo asserts that SunSpec "establishes relationships"

3    with its authorized laboratories and that when a SunSpec member seeks product certification, "one

4    or more" of these labs "performs the tests required by the RSD Test Specification under

5    SunSpec's direction and control."  SAC ¶ 102.  SunSpec contradicts this portrayal, stating that

6    "the third-party testing labs are trusted and able to follow their own best practices."  Mot. 15:13-

7    17.  Again, this raises a factual dispute that must be resolved later.  And I am not convinced that

8    the arrangement as SunSpec explains it is inconsistent with vicarious liability.  That SunSpec

9    trusts the labs and believes that they can follow their own best practices does not mean that the

10   labs act independently.  Those details can be revealed through discovery.

11   In another factual dispute, SunSpec argues that the Test Specification is "optional and

12   voluntary," and "not a matter of conformance," and therefore does not show direction or control

13   by SunSpec of the labs.  Mot. 10:7-19; 15:8-17.  In its opposition, Tigo points to SunSpec's

14   manuals, arguing that they show that compliance with the RSD Specifications was not so much

15   "optional and voluntary" as it was definitional to the test requirements to determine if a system

16   followed its rapid shutdown system compliance requirements.  Oppo. 13:19-23.  Though SunSpec

17   argues that the Test Specification is "informative" rather than an "interoperability specification,"

18   Mot. 10:7-19, 15:8-17, Tigo points out that that the Test Specification's revision history shows

19   that at different times its status was set to "APPROVED" and "TEST," Oppo. 13:19-23; *see also*

20   SAC, Ex. 3 (Test Specification) [Dkt. No. 31-3, at iii], suggesting that the Test Specification was a

21   "tightly control[led]" matter of conformance with the specification rather than merely informative.

22   Whether this is an accurate reading of the Test Specification need not be resolved at the pleading

23   stage.  The facts as Tigo alleged them support a finding of vicarious liability for SunSpec

24   regarding the testing laboratories.

25   The Federal Circuit has held that direct infringement applies when the acts of infringement

26   are committed by an agent of the accused infringer or a party acting pursuant to the accused

27   infringer's direction or control.  *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301,

28   1307 (Fed. Cir. 2012), *rev'd on other grounds*, 572 U.S. 915 (2014).  If one party controls or

United States District Court
Northern District of California

directs the actions of another to perform one or more steps, the controlling party can be held vicariously liable for the other party's actions. *See Centillion*, 631 F.3d, at 1287. SunSpec cannot, at this stage, claim that it does not use the accused system merely because it contracts testing members' compliance with RSD Specifications out to third-party laboratories. It repeats its argument from its first motion to dismiss that Tigo's allegations of control are conclusory, but I already found they are sufficiently plausible at this stage, where plausible inferences are drawn in Tigo's favor. Whether SunSpec truly controls the labs and whether these are the same labs that make, use, or test the accused systems will be revealed in discovery.

Finally, contrary to SunSpec's arguments, the Federal Circuit's holding in *Acceleration Bay* does not foreclose Tigo's claims. There, the court held that for a direct infringement claim under § 271, making a system "requires a single entity to combine all the claim elements and that, if a customer, rather than an accused infringer, performs the final step to assemble the system, then the accused infringer has not infringed." *Acceleration Bay*, 15 F.4th at 1074. As a preliminary matter, the case is not wholly applicable because it considered customers as actors in patent infringement, while here SunSpec never asserts that it has customers, and Tigo's direct infringement claims are directed at the labs. *See generally* Mot.; *see also* Oppo. 7:15-23, 8:1-2; SAC ¶¶ 102-15. But more importantly, Tigo's theory is that under *Centillion*, SunSpec and the labs constitute a "single entity" that combined all the claim elements because SunSpec sufficiently controlled the labs and testing processes. Given that plausible theory, if the Federal Circuit requires a single responsible party to assemble the infringing system for a direct infringement claim to survive, Sunspec and the labs constitute a single party. The complaint plausibly alleges that they are not separate entities and that their use, testing, and making of the accused systems are not separate or dividing acts.

### B.    Doctrine of Equivalents

Tigo also alleges that SunSpec has infringed on the '321 patent under the doctrine of equivalents. Under the DOE, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented

United States District Court
Northern District of California

1    invention." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1354 (Fed. Cir. 2018) (citation

2    omitted). "A finding of infringement under the doctrine of equivalents requires a showing that the

3    difference between the claimed invention and the accused product or method was insubstantial or

4    that the accused product or method performs the substantially same function in substantially the

5    same way with substantially the same result as each claim limitation of the patented product or

6    method." *AquaTex Indus., Inc. v. Techniche Sols*., 479 F.3d 1320, 1326 (Fed. Cir. 2007).  "To find

7    infringement, the accused device must contain each limitation of the claim, either literally or by an

8    equivalent." *TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364 (Fed. Cir. 2008).

9    An equivalent to a claim limitation can be proved based on the "well established 'function-way-

10   result' or 'insubstantial differences' test." *Bio-Rad Labs, Inc. v. 10X Genomics Inc.*, 967 F.3d

11   1353, 1366-67 (Fed. Cir. 2020).

12       Direct infringement analysis under the doctrine of equivalents proceeds element-by-

13   element. *Abbot Lab's v. Sandoz, Inc.*, 556 F.3d 1282, 1297 (Fed. Cir. 2008).  The primary test for

14   equivalency is the function-way-result or "triple identity" test, "whereby the patentee may show an

15   equivalent when the accused product . . . performs substantially the *same function,* in substantially

16   the *same way*, to achieve *substantially the same result*." *Id.* (emphasis added).  When a plaintiff

17   plausibly alleges literal infringement, a general allegation of infringement under the DOE is

18   sufficient.  *See CAO Lighting, Inc. v. Signify N.V.*, No. CV-21-08972, 2022 WL 16894518, at *4

19   (C.D. Cal. Sept. 19, 2022); *see also Neutrik AG v. ADJ Prods., LLC*, No. CV-19-09937, 2020 WL

20   6128066, at *4 (C.D. Cal. May 6, 2020)

21       In the SAC and in its opposition, Tigo applied the DOE, as explained by the Federal

22   Circuit, to the issue of the missing solar module in Figures 3.1 and 3.2.  SunSpec argues in a

23   footnote of the second motion to dismiss that Tigo only "alleges generically" that a simulator

24   (shown in Figures 3.1 and 3.2) is equivalent to a solar module and therefore that Tigo cannot

25   satisfy the DOE for purposes of pleading infringement.  Mot. 15 n.14.  In the prior order, I

26   explained that because Tigo plausibly alleged literal infringement against SunSpec and the labs in

27   the FAC, generic allegations of infringement by those parties under the DOE were sufficient to

28   survive a motion to dismiss.  However, because Tigo had not plausibly alleged literal infringement

against SunSpec members and their customers in the FAC, general allegations of infringement under the DOE against those parties were insufficient.  Prior Order 14:15-23.  Tigo argues that the SAC, as amended, identifies "specific facts related to both the insubstantial differences and the function-way-result tests," Oppo. 9:6-10, exceeding the "general allegations" standard and thus sustaining an infringement under the DOE claim against SunSpec, its labs, and its members and members' customers.

I agree with Tigo.  Moreover, as I discuss in the next section, the SAC has also plausibly alleged direct infringement by SunSpec members and their customers, meaning that at this stage Tigo need only make general allegations of infringement under the DOE against those parties to survive the motion to dismiss.

In its second amended complaint, Tigo employs what is colloquially referred to as the "triple identity test" to allege that for SunSpec's purposes, "a DC supply simulating a PV module" (referred to earlier in this paragraph as a "simulator") is equivalent to a solar module.  SAC ¶¶ 110-112.  Tigo argues that a "DC supply simulating a PV module" is insubstantially different from a solar module because it is "designed and intended to simulate a solar module and because the standard allows it to be used interchangeably with a solar module in this context."  *Id.*  Tigo further pleads that SunSpec RSD Specifications show that the simulator is performing the same function, in the same way, to achieve the same result; in short, Tigo argues that the diagram and the system it portrays passes the triple identity test.[1]  *Id.*

SunSpec disputes the equivalency between a solar panel simulator and the solar module in the accused system because the solar panel simulator does not "convert photons into electrical energy."  Mot. 15 n.14.  While this may ultimately be true, Tigo is correct that this is a dispute about merits and insufficient reason to dismiss Tigo's complaint.  At this stage, the facts as

---

[1] The Supreme Court has described "interchangeability" as an "important factor" to be considered in whether something is equivalent.  *Graver Mfg. Co. v. Linde Co.*, 339 U.S. 605, 609 (1950); *see also Warner-Jenkinson Co. v. Hilton Davis Chem.*, 520 U.S. 17, 25 (1997).  Tigo points out that if "using a solar panel simulator is good enough for SunSpec to certify to the public that the product will work when connected to an actual solar panel in an actual rapid-shutdown system, it is at least plausible that the solar panel simulator is insubstantially different from a solar panel in this context."  Oppo. 9:11-18.  This is a plausible allegation of interchangeability.

pleaded must be interpreted in a light that is most favorable to the non-moving party. Tigo has plausibly alleged that a simulator is equivalent to a solar module, element-by-element, for the purposes of surviving this motion to dismiss. In doing so, Tigo has plausibly alleged that any entity that uses the RSD Specification is directly infringing upon Tigo's '321 patent under the doctrine of equivalents. Tigo's assessment may prove to be inaccurate after further discovery; after all, this is relatively uncharted territory, and applying the triple identity test to a standard-setting system may prove inappropriate as the case progresses. But at this stage in the pleading, Tigo has plausibly alleged equivalency between the elements SunSpec employs in its testing and the elements of the accused systems.[2]

For the foregoing reasons, I conclude that the facts Tigo pleads, when taken in a light most favorable to Tigo, plausibly allege direct infringement by SunSpec and by its authorized laboratories, both literally and under the DOE. How Tigo has alleged direct infringement by SunSpec members and their members' customers is discussed in more detail in Section II, as part of my analysis of defendants' motion to dismiss plaintiffs' induced infringement claims.

## II.    INDUCED INFRINGEMENT

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. §271(b). A party is liable for induced infringement if it "took certain affirmative acts to bring about the commission by others of acts of infringement and had knowledge that the induced acts constitute patent infringement." *TecSec, Inc. v. Adobe, Inc.*, 978 F.3d 1278, 1286 (Fed. Cir. 2020) (citations and quotations omitted). "The intent standard focuses on . . . the defendant's subjective state of mind, whether actual knowledge or the subjective beliefs (coupled with actions to avoid learning more) that characterizes willful blindness." *Id.* (citation omitted). Finally, "where there has been no direct infringement, there can be no inducement of infringement under

---

[2] SunSpec also argues that Tigo has failed to establish that any testing laboratory made or used the systems in the asserted claims because there is no requirement that products be tested for interoperability under Sections 4 or 5 of the SunSpec Test Specification. But I know of no rule stating that a testing *requirement* must exist when the mere employment of that test is alleged to constitute patent infringement. This also does away with SunSpec's argument that Figure 4.1 does not *require* the use of a PV module and therefore cannot be plausibly pleaded to be infringing upon the '321 Patent.

§271(b)."  *Limelight*, 572 U.S. at 922.  "[A] complaint must plead facts plausibly showing that the accused infringer specifically intended another party to infringe the patent and knew that the other party's acts constituted infringement."  *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d at 1355 (citations omitted).

SunSpec argues that Tigo's induced infringement theory fails because the SAC does not plausibly allege (1) any underlying act of direct infringement, or (2) that SunSpec knowingly encouraged or induced infringement, both of which are required to allege induced infringement. However, at this stage I conclude that Tigo has plausibly alleged underlying acts of direct infringement by SunSpec authorized third-party testing laboratories, and by SunSpec members and their customers.  Tigo has also plausibly alleged that SunSpec was aware that the acts they induced in the labs and in their members and members' customers constituted patent infringement. While Tigo's allegations may very well be proven false later in this litigation, the accuracy of these allegations is a merits dispute.

### A.    Labs' Infringement

As addressed above, Tigo plausibly alleges that the actions of the testing laboratories directly infringed the '321 Patent.  *Supra* Part I.a; *see Limelight*, 572 U.S. at 922; *Centillion,* 631 F.3d at 1288; SAC ¶ 103.  It also plausibly alleges that SunSpec "took certain actions" to induce the labs to infringe, and that it "had knowledge" that those actions constituted infringement.  *See TecSec*, 978 F.3d at 1286.  Tigo asserts that it notified SunSpec in October 2017 that at least claims 1 and 12 of the '321 Patent were "necessary" to SunSpec's RSD Specifications, and that in November SunSpec "publicly acknowledged" Tigo's notice at "Member's Briefing" and on its website.  SAC ¶¶ 55-57.

Tigo further states that in February 2020 it sent SunSpec a letter through counsel explaining that its rapid-shutdown standards infringe on Tigo's '321 Patent, after which SunSpec responded by posting a "prior art synopsis" on its website to refute Tigo's assertions, to suggest that Tigo's claims were unenforceable, and to "induce" its members to infringe the patent.  *Id.* ¶¶ 58-60.  And in 2021, Tigo says it told SunSpec it would be willing to license its patent to SunSpec members if SunSpec notified its customers that they needed a license, but SunSpec

13

1   declined to take action, instead filing for inter partes review ("IPR") with the Patent Trial and

2   Appeal Board ("PTAB").  *Id.* ¶¶ 61-65.  Despite that knowledge, Tigo asserts that SunSpec

3   continued to induce the labs to infringe, choosing not to ask members or members' customers to

4   obtain a license from Tigo prior to using the RSD Specifications.  *Id.*  Quite to the contrary, Tigo

5   alleges in February 2022, SunSpec issued a press release on its website claiming that Tigo's '321

6   Patent was invalid.  *Id.* ¶ 68.

7          It is plausible to infer from these allegations both that SunSpec has known of the

8   infringement for years and that it knowingly continued its efforts to have its labs carry out the

9   infringing processes.  *See TecSec*, 978 F.3d at 1286.  Though SunSpec contends that it believed

10  the patent was invalid after its complaint to the PTAB, Mot. 17:17-27; 18:1-2, this argument

11  comes up short given the text of the PTAB decision,[3] and SunSpec clearly had knowledge of that

12  decision.  SunSpec has not refuted the allegation that it knew since at least October 2017 that

13  "products adhering to the SunSpec RSD Specification infringe at least Claims 1 and 12 of the '321

14  patent," and that despite this, it has directed authorized laboratories to test the products for

15  compliance with that specification and in fact advertised on its website that the Patent Office

16  invalidated Tigo's '321 Patent, which Tigo alleges is not true.  Oppo., at 24:14-23; 25:1-5;

17  Motion, at 17:17-27; 18:1-2.  In short, Tigo has plausibly alleged that SunSpec knew the patent

18  was not invalid.  SunSpec has not pointed to facts that make Tigo's allegations of induced

19  infringement via the labs implausible, and the induced infringement claim against the labs may

20  proceed.

21          **B.     SunSpec Members' Infringement**

22          Tigo also alleges that SunSpec induced its members, their customers, and solar installers to

23  infringe the '321 Patent.  SAC ¶ 81.  I previously found this allegation conclusory because Tigo

24  did not allege with any specificity *how* members, their customers, or solar installers directly

25

26

27  _____

28  [3] The PTAB clearly found, in part, that "Petitioner [SunSpec] has not shown by a preponderance of the evidence that claims 1, . . . 12 . . . of the '321 patent are unpatentable."  SAC Ex. 10 [Dkt. No. 31-10].

infringed (a prerequisite for an induced infringement allegation), but instead merely repeated § 271(a) language.  Tigo has since expanded upon its allegations.

### 1.     Direct infringement by SunSpec members or SunSpec members' customers

#### a.     The Solectric System Offer

Tigo provides at least two plausible accounts of direct infringement by SunSpec's customers.  First, Tigo points to SunSpec's member, Solectric, and its July 2023 Solectic System Offer to install a 4.00kW solar system that complies with the SunSpec RSD Certification.  It plausibly alleges that Solectric directly infringes on the patent because (1) any system in compliance with the RSD Specifications infringes, SAC ¶¶ 38-54, and (2) Solectric's offer is compliant with the RSD Specification.

The Solectric System Offer includes a SMA inverter, which is described as compliant with the SunSpec RSD Specifications.  Its datasheet (SAC, Ex. 13) includes the SunSpec rapid shutdown certification logo.  SAC ¶ 84; *see also* SAC Ex. 13.  In my order granting in part and denying in part SunSpec's motion to dismiss the FAC, I stated that Tigo needed to plead its induced infringement claim against SunSpec members with more particularity.  In the FAC, all Tigo pleaded was that certain SunSpec members made and sold particular devices that were designed to be used with combination with SunSpec rapid shutdown devices.  Prior Order 14:22-25.  In the SAC, Tigo alleges with more specificity how SunSpec member Solectric uses the entire accused system.  SAC ¶¶ 84-86.  Whether and to what extent the Solectric System Offer actually infringes on the '321 Patent will come out in discovery.  At this stage, because Solectric states that the systems it sells are in compliance with the SunSpec RSD Specifications, and Tigo has plausibly alleged that any system in compliance with these specifications directly infringes upon Tigo's '321 Patent, Tigo has plausibly alleged that Solectric, as a SunSpec member, has directly infringed on the patent.

SunSpec takes issue with Tigo's argument that Figure 1 of the Interoperability Specification and the corresponding figure from the SunSpec Fact Sheet portray each element of the systems of the asserted claims and as such encourage members of the public to infringe on the

United States District Court
Northern District of California

1  '321 Patent.  Mot. 17:6-20; SAC ¶¶ 25, 29, 32.  SunSpec contends that neither of the figures

2  "definitively portray each element of the systems of the asserted claims."  But as I addressed

3  above, Tigo has plausibly alleged equivalency between the figures at issue.  Because it has

4  plausibly alleged equivalency, SunSpec's first argument against direct infringement by SunSpec

5  members such as Solectric and the United Solar Electric System Offer is unpersuasive.  SunSpec

6  also contends that because it is possible to achieve NEC compliance without complying with the

7  SunSpec RSD specifications, Solectric's conduct does not constitute direct infringement on the

8  '321 Patent.  Again, as I explained before, I know of no rule that states that the alleged infringing

9  party must *require* that the accused system be utilized for its use to qualify as infringement.

10  Finally, SunSpec questions the authenticity and credibility of the Solectric system offer, arguing

11  that it may not be legitimate and that the possibility of inauthenticity should preclude Tigo's use of

12  the Solectric offer as an example of direct infringement by a SunSpec member or customer.  Oppo.

13  18:16-17.  I agree with Tigo that the question of the offer's credibility is not an issue for this stage

14  of the pleading and can be disputed as the parties proceed through discovery.

15  **b.    SMA Testing**

16  Tigo also alleges that SunSpec member SMA directly infringed on the '321 Patent by

17  publication of a video describing how to install SMA's JMS-F rapid-shutdown receiver.[4]  SunSpec

18  denies that this example illustrates direct infringement because the video does not show all the

19  components of the accused system and argues that I should disregard the example when

20  considering how to rule on Tigo's induced infringement claims.

21  The video states that SMA tested the SMA JMS-F rapid shutdown device with the Sunny

22  Boy US-41 inverter line as well as the Core 1 US-41 inverter line, both of which Tigo alleges are

23

24  _____

[4] The defendants' unopposed request for judicial notice of four separate SunSpec Rapid Shutdown

25  Certificates (three for SMA Solar Technology products, and one for Zhejiang Jiaming Tianheyuan
PV Tech Co Ltd's product), [Dkt. No. 32-1], is GRANTED.  Tigo incorporated the certificates

26  directly into its complaint by referencing the certificates in its SAC.  *See* SAC ¶ 33 *see also
Karasek v.  Regents of the Univ.  of Cal*., No. 15-CV-03717-WHO, 2016 WL 4036104, at *2 n.2

27  (N.D. Cal. July 28, 2016) (taking judicial notice of documents incorporated by reference into
complaint).  By doing so, I take judicial notice of the existence of the certificates "but not the truth

28  of the facts asserted in them, as they are subject to reasonable dispute."  *Zeiger v.  WellPet LLC*,
304 F. Supp.  3d 837, 845 (N.D. Cal. 2018).

SunSpec certified.  SAC ¶¶ 93-94, Exs. 13, 21 (at 0:30-0:45); *see also* Def.'s Req. for Judicial Notice 3:21-28.  It is reasonable to infer that SMA did what it claims to have done in the video, and that its JMS-F rapid shutdown device complies with the SunSpec RSD Specifications.  As addressed above, Tigo plausibly alleges that any system that is in compliance with the RSD specification also directly infringes the '321 Patent.  *Supra* II.a, II.b.  And while SunSpec argues that the video "does not show all components, arranged as required by the asserted claims," Mot. 20:1-10, the SAC plausibly alleges that the video depicts all the components of the claimed solar system, albeit labeled differently from the accused systems.  *See* SAC ¶¶ 94, 96, 98; *see also* Repl. 19:7-13.  Accordingly, the DOE argument applies once more.  *Supra* II.b.  Whether SMA's video actually infringes the '321 Patent is a question that can be resolved at a later stage of litigation.

## 2.    Knowledge of infringement

Tigo also plausibly alleges that SunSpec took affirmative acts to induce infringement by its members and their customers, and that those induced acts constituted infringement.  *See TecSec*, 978 F.3d at 1286.  As addressed, Tigo plausibly alleges that any system using the RSD Specifications infringes its patent.  It also plausibly alleges that SunSpec developed and publishes the SunSpec RSD Specifications with the intent that they be used, meaning that "members of the public . . . will install and use solar systems that comply with the SunSpec RSD Specifications." SAC ¶ 24.

Tigo states that because SunSpec advertised the RSD Specifications as a route toward compliance with rapid shutdown system requirements such as those imposed by the NEC and adopted by California, it is probable that SunSpec knowingly encouraged at least SunSpec member Solectric to comply with the accused system.  SAC ¶¶ 82, 86.  It is not difficult to imagine that discovery might produce more such members who appear to have similarly followed SunSpec's specifications at SunSpec's encouragement.  Tigo contends that SunSpec intends for its members and their customers to comply with the SunSpec RSD Specifications and encourages them to do so by use of SunSpec's Rapid Shutdown Fact Sheet.  SAC ¶ 32, 37.  From these allegations, it is reasonable to infer that SunSpec intends its standards to be used in solar systems

United States District Court
Northern District of California

1    and so SunSpec intends its members and customers who use the standards to infringe on the

2    patent.  SunSpec asserts that these allegations are too conclusory to allege intent but I disagree.

3          Though SunSpec contends that its "members make their own decisions" about practicing

4    the RSD Specifications and making, using, or selling products, that has no apparent bearing on

5    whether SunSpec encouraged, instructed, or otherwise promoted infringement of the '321 Patent.

6    *Cf. Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) (noting inducement

7    "requires knowledge that the induced acts constitute patent infringement," not that inducement

8    considers whether the induced party had a choice to not infringe); *Nalco*, 883 F.3d at 1355.

9    SunSpec seeks to minimize the plausibility of its intent to induce infringement by asserting that it

10   has "no relationship with the customers and installers" of its members, and that it "does not

11   encourage them to do anything."  Mot. 23:10-13.  This seems like an overly reductive portrayal of

12   SunSpec's relationship with the entities that use its product, given that the product in question is

13   promoted in detail on SunSpec's website, but those facts will be developed later.  There is no

14   known requirement that SunSpec have an explicit relationship with customers and installers to

15   encourage them to infringe upon Tigo's '321 patent.  If an entity like SunSpec brings in

16   membership and revenue by publishing standards with which members of the public may evaluate

17   solar systems, it cannot reasonably claim to have "no relationship" with the very entities that are

18   using its standards.  Tigo plausibly alleges that SunSpec's members and its customers infringe the

19   patent and that SunSpec knowingly induced those groups to infringe.

20         Because Tigo plausibly alleges that SunSpec knowingly induced the laboratories as well as

21   its members and customers to infringe Tigo's patents, SunSpec's motion is DENIED.

22                                    **CONCLUSION**

23         For those reasons, the motion to dismiss Tigo's direct and induced infringement claims is

24   DENIED.

25         **IT IS SO ORDERED.**

26   Dated: September 26, 2023



William H. Orrick
United States District Judge

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California